746 F.2d 635
 40 Fed.R.Serv.2d 581
 James K.T. HUNTER and Gina F. Brandt, Plaintiffs-Appellants,
v.
UNITED VAN LINES, A Missouri Corporation, Trilco, Inc., a
California corporation, John Trlica, Crown Transfer and
Storage, a California corporation, Belmont Van and Storage
Company, a California corporation, and John Falbe,
Defendants-Appellees.
 No. 83-5911.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 5, 1984.
Decided Nov. 5, 1984.
As Amended on Denial of Rehearing and Rehearing En Banc Jan. 29, 1985.
 
 James K.T. Hunter, Los Angeles, Cal., for plaintiffs-appellants.
 Grover A. Perrigue, III, Peter F. Wisner, Robert Parker Mills, P.C., Pasadena, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before SNEED and REINHARDT, Circuit Judges, and EAST,* District Judge.
 REINHARDT, Circuit Judge:
 
 
 1
 Plaintiffs filed suit in state court against a common carrier and its independent contractors. They presented a claim under the Carmack Amendment, 49 U.S.C. Sec. 11707 (Supp. V 1981), seeking damages for injuries to their property caused by the common carrier. They also presented state-law claims for fraud in the negotiation of the contract of carriage and for bad faith and intentional infliction of emotional distress in connection with the defendants' handling of the damage claims. Defendant common carrier removed the case to federal district court, arguing that the Carmack Amendment preempted the state laws plaintiffs relied on.
 
 
 2
 Plaintiffs made a motion to remand the entire action to state court on the ground that federal jurisdiction over this case was lacking. They argued that the federal claim[1] did not reach the jurisdictional amount and that federal jurisdiction over the state claims was lacking. The district court, without an opinion, denied the motion to remand. It later granted partial summary judgment in favor of the defendants on the ground that the state-law claims were preempted by the Carmack Amendment. It then remanded to state court the claims against the independent contractors and the remaining claim against the common carrier.
 
 
 3
 Plaintiffs appeal. They argue that the district court should have remanded the entire case to state court without considering the preemption issue because federal jurisdiction over the case was lacking. We agree.
 
 DISCUSSION
 
 4
 Jurisdiction in this case was premised on the removal statute, 28 U.S.C. Sec. 1441(a), which confers federal removal jurisdiction over any civil action over which the district courts would have had jurisdiction had the case been brought there originally. Appellees assert that the district court would have had jurisdiction over this case under 28 U.S.C. Sec. 1337(a). That section provides as follows:
 
 
 5
 (a) The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies: Provided, however, That the district courts shall have original jurisdiction of an action brought under section 11707 of title 49, only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs.
 
 
 6
 28 U.S.C. Sec. 1337(a) (1982). It is clear that the district court would have had jurisdiction over this case under section 1337(a) had the Carmack Amendment claim exceeded $10,000. It is also clear that plaintiffs' Carmack Amendment claim was for significantly less than $10,000.[2] Each of plaintiffs' state-law claims, however, well exceeds the jurisdictional amount. Thus, if plaintiffs' state-law claims could be deemed to "arise under" the Carmack Amendment, or if the amounts claimed under state law could be considered in determining the "matter in controversy" within the meaning of section 1337(a), there would be no jurisdictional-amount problem. Appellees set forth a number of theories under which they contend federal jurisdiction over this case can be found. We shall address each in turn.
 
 
 7
 Preliminarily, however, we note that "the 'arising under' language in section 1337 is interpreted in essentially the same way as the 'arising under' phrase in section 1331." Garrett v. Time-D.C., Inc., 502 F.2d 627, 629 (9th Cir.1974), cert. denied, 421 U.S. 913, 95 S.Ct. 1569, 43 L.Ed.2d 778 (1975). In interpreting that language in section 1337, therefore, we shall draw freely from authorities discussing the circumstances under which a case "arises under" federal law within the meaning of section 1331. We also note that the burden of establishing federal jurisdiction falls on the party who invokes the removal statute. Salveson v. Western States Bankcard Association, 731 F.2d 1423, 1426 (9th Cir.1984). Here, appellees bear that burden. Moreover, the removal statute must be strictly construed against them. Id.
 
 I. Jurisdiction Based on Preemption
 
 8
 We begin our analysis with a well-settled, elementary principle of "arising under" jurisdiction: a case "arises under" federal law within the meaning of the general federal question statute only if the federal question appears on the face of plaintiff's well-pleaded complaint; if not, original jurisdiction is lacking even if the defense is based on federal law. See Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Because removal jurisdiction exists only if original jurisdiction would have existed, the so-called "well-pleaded complaint rule" applies to removal cases as well. See Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 2845-48, 77 L.Ed.2d 420 (1983). A defendant thus cannot remove a state-law claim from state to federal court even if his defense is based entirely on federal law.
 
 
 9
 The rationale behind tying removal jurisdiction to original jurisdiction is questionable: if the principal purpose of giving federal courts original jurisdiction over federal claims is to afford parties relying on federal law a sympathetic, knowledgeable forum for the vindication of their federal rights, see Mishkin, The Federal "Question" in the District Courts, 53 Colum.L.Rev. 157, 170-76, then it makes little sense to allow a defendant to remove a case to federal court only if the plaintiff relies on federal law. Congress plainly has the power to confer removal jurisdiction over cases in which only the defense is based on federal law. See Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 2843, 77 L.Ed.2d 420 (1983) (This rule "involv[es] perhaps more history than logic."); Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 103 S.Ct. 1962, 1972, 76 L.Ed.2d 81 (1983). In fact, the original removal statute conferred jurisdiction over such cases on federal courts. Act of March 3, 1875, ch. 137, Sec. 2, 18 Stat. 470; see Railroad Co. v. Mississippi, 102 U.S. 135, 26 L.Ed. 96 (1880). Commentators have urged Congress once again to confer on federal courts removal jurisdiction over cases in which the defendant relies on federal law. See, e.g., American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts Sec. 1312 (1969). Congress, however, has failed to act and, since at least 1894, removal jurisdiction has been unavailable in cases in which the federal question appeared only as a defense. See Tennessee v. Union & Planters' Bank, 152 U.S. 454, 459, 14 S.Ct. 654, 655, 38 L.Ed. 511 (1894). Until Congress changes that rule, it will remain true that, despite the compelling policies favoring a contrary rule, defendants relying on federal law are not entitled to a federal forum unless the plaintiff also relies on federal law.
 
 
 10
 When, as in the case before us, plaintiff presents a state-law claim and defendant counters by arguing that federal law preempts the state law on which plaintiff relies, the federal claim appears by way of defense. Cf. Champion International Corp. v. Brown, 731 F.2d 1406, 1407 (9th Cir.1984) (finding federal jurisdiction over a declaratory judgment action in which plaintiff's argument was based on federal preemption). Under the well-pleaded complaint rule, federal jurisdiction over such a claim is lacking. See Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983); Garibaldi v. Lucky Food Stores, Inc., 726 F.2d 1367 (9th Cir.1984); Guinasso v. Pacific First Federal Savings and Loan Association, 656 F.2d 1364 (9th Cir.1981), cert. denied, 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982). We recognize defendants' very real and, in our view, substantial interest in having their federal preemption argument decided by a federal court. However, under the current removal statute, such an interest is simply not a cognizable basis for federal jurisdiction.
 
 II. Jurisdiction Based On Artful Pleading
 
 11
 Appellees cite a number of cases in which, they assert, we departed from the foregoing principle: Schroeder v. Trans World Airlines Inc., 702 F.2d 189 (9th Cir.1983); Fristoe v. Reynolds Metals Co., 615 F.2d 1209 (9th Cir.1980); Magnuson v. Burlington Northern, Inc., 576 F.2d 1367 (9th Cir.1978), cert. denied, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978); Johnson v. England, 356 F.2d 44 (9th Cir.1966), cert. denied, 384 U.S. 961, 86 S.Ct. 1587, 16 L.Ed.2d 673 (1966). All of those cases are labor cases in which the plaintiff professed not to be relying on federal law. In each case, the defendant removed the case to federal court and the district court denied the plaintiff's motion to remand. Citing cases holding that the particular conduct complained of was governed exclusively by federal law, the court in each case rejected the plaintiff's argument that his claim was purely a state-law claim. We affirmed the finding that federal jurisdiction existed under the so-called "artful pleading" doctrine, which operates to allow courts under some circumstances to recharacterize a plaintiff's state-law claim as a federal claim.[3] Appellees here argue that those cases stand for the proposition that federal jurisdiction over an asserted state-law claim exists whenever the state-law claim is preempted by federal law. We reject such a broad reading of the artful pleading doctrine.
 
 
 12
 First, we note that there exists some tension between the artful pleading doctrine and what has been called the corollary of the well-pleaded complaint rule--the "master of the complaint" rule. See 13 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure Sec. 3566, at 438 (1975) [hereinafter cited as Federal Practice and Procedure ]. Justice Holmes wrote in 1913, "the party who brings a suit is master to decide what law he will rely upon, and therefore does determine whether he will bring a 'suit arising under' the patent or other law of the United States by his declaration or bill." The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). A different rule would seem most inappropriate in a judicial system such as ours: if a person is free not to vindicate his rights in court at all, then he should be free to assert in court only those rights he chooses. Because our system is adversarial in nature, a defendant is required to address only those claims plaintiff raises. Thus, ordinarily at least, if plaintiff chooses to raise only a state-law challenge to particular conduct, and if defendant prevails on his argument that the asserted state-law claim has been preempted by federal law, the case is over. Moreover, under such circumstances plaintiff may have lost not only the claim he actually presented; in many cases he will have also lost his right to challenge the same conduct on federal grounds. See Migra v. Warren City School District Board of Education, --- U.S. ----, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (federal court must give state court judgment the same preclusive effect as would be given that judgment under the law of the state that rendered the judgment).
 
 
 13
 The artful pleading cases cited by appellees depart from that model. Instead of simply accepting the plaintiff's claim that he is only presenting state-law claims--which in each of those cases would have resulted in a remand by the federal court for lack of subject-matter jurisdiction and ultimately in dismissal on the merits by a state court based on federal preemption--the district court (a) recharacterized plaintiff's state-law claims as federal claims, (b) exercised jurisdiction over them, and (c) proceeded to consider whether the plaintiff should prevail under federal law. The artful pleading doctrine, as applied in those cases, is thus clearly an exception to the ordinary rules of federal jurisdiction. Our task is to determine whether this case falls within that exception. We conclude that it does not.
 
 
 14
 If we were to accept appellees' argument that the artful pleading doctrine applies whenever federal law preempts plaintiffs' state-law claims, we would be entirely eliminating the general rule that federal jurisdiction does not exist simply because the defendant claims preemption as a defense. Such a holding would thus be inconsistent with our cases holding that the general rule retains vitality. See Guinasso v. Pacific First Federal Savings and Loan Association, 656 F.2d 1364 (9th Cir.1981), cert. denied, 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982); Nalore v. San Diego Federal Savings and Loan Association, 663 F.2d 841, 842 (9th Cir.1981), cert. denied, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1982); see also Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 2846-48, 77 L.Ed.2d 420 (1983); 1A J. Moore & B. Ringle, Moore's Federal Practice p 0.160 (1983) (discussing cases from other courts applying the rule appellees urge us to adopt and stating that
 
 
 15
 the better view is expressed by the Third, Seventh, Eighth, and Ninth Circuits which have concluded that the assertion of a defense that federal law has preempted the state law upon which plaintiff relies does not create a federal question for purposes of the general removal statute. Preemption involves a federal issue; but there is no justification for distinguishing the issue of preemption from any other federal issue raised in defense.
 
 
 16
 (citations omitted)). Thus, while we think that a finding of federal preemption is necessary, in most cases, before jurisdiction can be found under the artful pleading doctrine, see Garibaldi v. Lucky Food Stores, Inc., 726 F.2d 1367 (9th Cir.1984), we reject plaintiffs' argument that such a finding is sufficient.
 
 
 17
 In a recent non-preemption decision, we made it clear that where a plaintiff could plead either a state or a federal claim, he "is free to ignore the federal question and pitch his claim on the state ground." Salveson v. Western States Bankcard Association, 731 F.2d 1423, 1427 (9th Cir.1984) (quoting 1 A. Moore's Federal Practice p 0.160, at 1835 (2d ed. 1979)). We went on to say "[t]he artful pleading doctrine is to be invoked only in exceptional circumstances as it raises difficult issues of state and federal relationships and often yields unsatisfactory results." (emphasis added). Id. We nevertheless applied the doctrine in that case. We did so for the identical reason we found the Supreme Court had applied it in Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). We said that in both cases the plaintiffs had first filed suits alleging federal claims in federal courts and lost, and then attempted to recharacterize and refile those same claims in state court. Salveson, 731 F.2d at 1429. We said that the "[state] claim was really the same [federal] claim in disguise against which summary judgment had already been entered ...." Id. at 1427.
 
 
 18
 Our opinions have not fully articulated the rationale behind the artful pleading doctrine. Nor have we said what circumstances are "exceptional." In addition to the comments we made in Salveson, we have suggested without much further explanation that the doctrine prevents plaintiffs from "attempt[ing] to avoid a federal cause of action." Garibaldi, 726 F.2d at 1370; see also id. at 1370-71 n. 5; Schroeder, 702 F.2d at 191. The Supreme Court has also been somewhat cryptic in its explanations. It has suggested only that the general rule that the plaintiff is master of his complaint does not apply if he has "a fraudulent purpose to defeat removal." Great Northern Railway Co. v. Alexander, 246 U.S. 276, 282, 38 S.Ct. 237, 239, 62 L.Ed. 713 (1918). These statements leave unanswered many questions regarding the relationship between the master of the complaint rule and the artful pleading doctrine. However, along with the cases we discuss infra, they suffice to make it clear that the artful pleading doctrine applies in the preemption context only when a plaintiff has a federal claim to assert. If he does not he can hardly be deemed to be either harboring a fraudulent purpose or avoiding a federal cause of action by characterizing his claim as a state-law claim.
 
 
 19
 In Guinasso v. Pacific First Federal Savings and Loan Association, 656 F.2d 1364 (9th Cir.1981), cert. denied, 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982), we discussed a number of the artful pleading cases. Although our opinion is not entirely clear on the point, properly read it stands for the proposition that the artful pleading doctrine applies only when federal law not only displaces state law but also confers a federal remedy. See 656 F.2d at 1367. In the artful pleading cases we discussed in Guinasso, the claims involved were claims under Sec. 301 of the Labor Management Relations Act of 1947 [LMRA], 29 U.S.C. Sec. 185 (1982), which until 1957 had been thought to be governed by state law. See Johnson v. England, 356 F.2d 44 (9th Cir.1966), cert. denied, 384 U.S. 961, 86 S.Ct. 1587, 16 L.Ed.2d 673 (1966). In Textile Workers v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), however, the Supreme Court held for the first time that claims under section 301 would be governed by federal common law. After Lincoln Mills, the claims that had previously been thought to be state law claims continued to exist as before except that the governing law became federal rather than state. "In contrast," we said in Guinasso, "federal law provides neither the right asserted nor the remedy sought by the present plaintiffs." 656 F.2d at 1367 (footnote omitted).
 
 
 20
 In Garibaldi v. Lucky Food Stores, Inc., 726 F.2d 1367 (9th Cir.1984), we removed any doubt that may have remained after Guinasso about the necessity of a federal remedy. As we explained, "[t]he distinction between an artfully pled complaint and one that is preempted, but not removable, lies in whether ... the facts alleged were sufficient to state a federal cause of action on the face of the complaint." Id. at 1370 n. 5 (citation omitted). If so, we said, the claim is "removable because artfully pled." "Thus," we noted, "removal was proper [in Fristoe v. Reynolds Metals Co., 615 F.2d 1209 (9th Cir.1980),] because an allegation of breach of a collective bargaining agreement states on its face an action under the [Labor Management Relations Act]." Id. at 1371 n. 5 (emphasis in original). We found removal improper in other cases, we said, because "the preemption argument focused on the proposition that the state could not regulate the field, not that the complaint stated a federal cause of action." Id. "The preemption was defensive," we explained, "and not proper grounds for removal." Id. (emphasis in original).
 
 
 21
 Garibaldi made it clear that a state-law claim may be recharacterized as a federal claim only when the state-law claim is preempted by federal law and when it is apparent from a review of the complaint that federal law provides plaintiff a cause of action to remedy the wrong he asserts he suffered. We recently reaffirmed that rule in Olguin v. Inspiration Consolidated Copper Co., 740 F.2d 1468 (9th Cir.1984). There, after discussing the foregoing cases, we found the recharacterization proper because it was "apparent" that the complaint "actually stated claims under federal law." Id. at 1476. Thus, at least in this Circuit, removal is improper when federal law simply displaces state law without replacing the state cause of action with a federal one. When federal law displaces state law without supplanting it, a plaintiff cannot be deemed to be attempting to avoid a federal cause of action; there is no federal cause of action to avoid. In such a case federal preemption operates only as a defense.[4]
 
 
 22
 The Supreme Court's recent holding in Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), confirms the correctness of the rule we have derived from our earlier cases. In Construction Laborers, the Court was interpreting the holding of Avco Corp. v. Aero Lodge No. 735, International Association of Machinists, 376 F.2d 337, 339-40 (6th Cir.1967), aff'd, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). In Avco, removal was found proper even though the plaintiff sought to enforce a collective bargaining agreement only on the basis of state law. The Construction Laborers Court thought that "Avco stands for the proposition that if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." 103 S.Ct. at 2854. (emphasis added). Under Construction Laborers recharacterization is proper only if a federal cause of action exists. The Court found federal jurisdiction lacking in that case because, among other things, federal law "does not provide an alternative cause of action in favor of the State to enforce its rights, while Sec. 301 expressly supplied the plaintiff in Avco with a federal cause of action to replace its preempted state contract claim." 103 S.Ct. at 2855.
 
 
 23
 Applying that test here, we conclude that the artful pleading doctrine does not provide a basis for federal jurisdiction over the state claims alleged by the appellants in this case. Appellees, who seek to invoke federal jurisdiction, have failed to argue, let alone demonstrate, that federal law affords plaintiffs a remedy for the injuries they claim they suffered. Rather, their argument is that federal law displaces the state laws plaintiffs rely on. They state, in fact, that "[i]f Congress wanted to provide the Hunters with the additional causes and remedies they seek, Congress would have done so."[5] Because the preemption argument is thus defensive, a necessary requirement for recharacterizing the complaint is not satisfied, and we need not consider whether there is any merit to appellee's argument that the state-law claims are preempted. Federal jurisdiction is lacking whether or not the state claims are preempted.[6]
 
 
 24
 III. Jurisdiction Based on General "Arising Under" Principles
 
 
 25
 We next consider whether plaintiffs' state-law claims, as pleaded, can be said to "arise under" federal law within the meaning of 28 U.S.C. Sec. 1331 or Sec. 1337. Plainly, the state-law claims do not survive the most well-accepted of the tests for determining whether a case "arises under" federal law, the test Justice Holmes enunciated in American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916): "A suit arises under the law that creates the cause of action." The rights plaintiffs seek to vindicate in their claims for fraud, intentional infliction of emotional distress, and tortious bad faith were conferred by California, not by the United States. Appellees assert, however, that jurisdiction exists under a more expansive interpretation of "arising under" jurisdiction. We disagree.
 
 
 26
 A. Limitations Derived from General "Arising Under" Principles
 
 
 27
 Appellees rely on our discussion of "arising under" principles in Guinasso v. Pacific First Federal Savings and Loan Association, 656 F.2d 1364 (9th Cir.1981), cert. denied, 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982). There, we said that "a suit arises under an act of Congress regulating commerce within 28 U.S.C. Sec. 1337 if it ... 'hinges on' the act's interpretation." Id. at 1366. Appellees suggest that the state claims involved here "hinge on" whether the Carmack Amendment preempts them. Appellees ignore the sentence immediately following the one they rely on: "A substantial proposition of federal law must form 'a direct and essential element of the plaintiff's cause of action.' " Id. (emphasis added) (quoting Smith v. Grimm, 534 F.2d 1346, 1350 (9th Cir.), cert. denied, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976)). We have already explained that a preemption claim, when set up as a defense to a state claim, does not give rise to federal jurisdiction under sections 1331 or 1337. In fact, Guinasso itself stands flatly for that proposition. We see no need to repeat that discussion here.
 
 
 28
 Appellees have a somewhat more plausible argument when they contend that federal jurisdiction over plaintiffs' state-law claims exists because plaintiffs can prevail on those claims only if they establish that their Carmack Amendment claim is meritorious. They argue that a substantial proposition of federal law therefore forms "a direct and essential element" of each of plaintiffs' state causes of action, see Smith v. Grimm, 534 F.2d at 1350 (9th Cir.1976), and each therefore "arises under" federal law within the meaning of section 1337. We disagree.
 
 
 29
 The state claim that we think fits appellees' description most closely is the claim for tortious bad faith. The gist of that claim is that defendants engaged in harassment and intimidation designed to cause plaintiffs to abandon their Carmack Amendment claims or to accept unsuitable amounts in settlement. Some of the acts plaintiffs allege would, we think, constitute torts even in the absence of a Carmack Amendment dispute--indeed, the same alleged scheme forms the factual basis for plaintiffs' other state-law claims. The core of the tortious bad faith claim, however, is that the alleged harassment and intimidation on the part of appellees constituted a breach of their state-law duty to handle the contract claim in good faith. We assume that, in order to prevail on such a state-law claim, plaintiffs must show that they had at least a colorable contract claim against defendants; otherwise, there would have been no duty to negotiate the claim in good faith, and no breach would have occurred. Here, the alleged contract claim that gave rise to the duty to negotiate in good faith was a claim which was itself governed by federal law. Federal law thus can be said to form an ingredient in plaintiffs' state-law claim for tortious bad faith. We must determine whether that federal ingredient is sufficient to give rise to federal jurisdiction under sections 1331 or 1337.
 
 
 30
 We begin by noting that Congress undoubtedly has the power to confer on the district courts federal jurisdiction over claims such as this one. As Chief Justice Marshall held in Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 738, 824, 6 L.Ed. 204 (1824), the constitutional "arising under" provision extends to all causes in which "the [federal] question forms an original ingredient." However, despite language almost identical to the constitutional provision, the general federal question statute has been interpreted far more narrowly. As Justice Cardozo observed in 1936, and we repeated in 1976,
 
 
 31
 [i]f we follow the ascent far enough, countless claims of right can be discovered to have their source or their operative limits in the provisions of a federal statute or in the Constitution itself with its circumambient restrictions upon legislative power. To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible. We shall be lost in a maze if we put that compass by.
 
 
 32
 Gully v. First National Bank, 299 U.S. 109, 118, 57 S.Ct. 96, 100, 81 L.Ed. 70 (1936), quoted in Smith v. Grimm, 534 F.2d at 1350.
 
 
 33
 Justice Cardozo's compass was a metaphor for the judicially formulated limitations that have been read into the "arising under" language in the general federal question statute. Those limitations have been expressed in a series of tests for determining when a case "arises under" federal law, some of which are more useful than others. See Keaukaha-Panaewa Community Association v. Hawaiian Homes Commission, 588 F.2d 1216, 1225 (9th Cir.1978), cert. denied, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979), ("[The] cases do not fit snugly into a single, logical mosaic."). Appellees argue that the "hinges on" language they rely on is one such test. We find the phrase of limited usefulness, however. First, although we used it in two cases, in neither one did we either apply it or expound upon it. See Guinasso, 656 F.2d at 1366; Garrett v. Time-D.C., Inc., 502 F.2d 627, 629 (9th Cir.1974), cert. denied, 421 U.S. 913, 95 S.Ct. 1569, 43 L.Ed.2d 778 (1975). In Garrett, we cited Gully when using the "hinges on" language, but one of the things Justice Cardozo made clear in Gully is that countless claims can be said to depend in some way on federal propositions, yet not all such cases "arise under" federal law. The most obvious purport of the "hinges on" language--that a claim "hinges on" federal law when plaintiffs' success depends in any way on the application of a proposition of federal law--thus cannot be the intended one. Because on careful examination the phrase seems, by itself, to tell us little, we must look to other authorities for guidance.
 
 
 34
 Justice Cardozo instructed us to determine whether the federal element in the claim was "basic" as opposed to "collateral," and "necessary" as opposed to "merely possible." Gully, 299 U.S. at 118, 57 S.Ct. at 100. Similarly, courts have looked to whether the federal element in the claim was "pivotal,"North American Phillips Corp. v. Emery Air Freight Corp., 579 F.2d 229, 233 (2d Cir.1978), or "substantial," Franchise Tax Board v. Construction Laborers Vacation Trust, 103 S.Ct. at 2848, as opposed to merely "incidental[ ]," Postal Instant Press v. Clark, 741 F.2d 256 at 257 (9th Cir.1984), or whether it was "direct and essential" as opposed to "attenuated," Smith v. Grimm, 534 F.2d at 1350-51, or "paramount" as opposed to "collateral," Division 1287, Amalgamated Transit Union v. Kansas City Area Transportation Authority, 582 F.2d 444, 450 (8th Cir.1978) (quoting Baker v. Riss & Co., 444 F.2d 257, 259 (8th Cir.1971)), cert. denied, 439 U.S. 1040, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979). Thus, the resolution of the federal question must play a significant role in the proceedings. We conclude that the role played by federal law in plaintiffs' state-law claim for tortious bad faith (as well as in plaintiffs' other state-law claims) is insufficient to gives rise to federal "arising under" jurisdiction.
 
 
 35
 There is some question as to whether in order to prevail on their California tortious bad faith claim plaintiffs would have to show that their Carmack Amendment claim is valid, or simply colorable. We have found no controlling authority.[7] We think that it would be more sensible to require only a showing that the underlying claim has some substance, for even a person whose claim ultimately fails can be said to be entitled to good faith treatment during the settlement process. However, because of the uncertainty in the applicable law, we address both possibilities.
 
 
 36
 If California's duty of good faith is triggered by a colorable claim, as opposed to one ultimately found valid, then the federal element is insufficiently substantial under any standard. Even as to the preliminary, threshold question of whether defendant had a duty towards plaintiff, federal law would not be controlling in this state-law cause of action, for the degree of substance in the federal claim necessary to trigger the state-law duty to bargain in good faith would be a question of state law. If California requires only a colorable contract claim, the federal element in this case would beyond any question be "collateral" and "attenuated." Like the federal element we found insufficient to give rise to federal jurisdiction in United Air Lines v. Division of Industrial Safety, 633 F.2d 814 (9th Cir.1980), cert. denied, 454 U.S. 944, 102 S.Ct. 485, 70 L.Ed.2d 255 (1981), the federal issue here would be "tangential to the task of construing the state [law] and may not even be conclusive." Id. at 816. We would have, at most, only a "possible" federal question.
 
 
 37
 Even if California requires a showing that the contract claim is valid, federal jurisdiction is lacking. To be sure, proving a federal element would be necessary to making out the state claim. Nonetheless, federal law would play an insufficiently prominent role in the resolution of the state claim to give rise to federal jurisdiction over that claim. The gist of plaintiffs' bad faith claim is that defendants engaged in conduct regarding the handling of the underlying claim that is made unlawful by California; the federal element merely determines as a preliminary matter, whether the duty imposed by the state is applicable in the case of a particular transaction. The fact that federal law plays a preliminary, threshold role in the case of state claims such as this one does not, by itself, transform such state claims into federal ones.
 
 
 38
 The cases involving federal land patents and federal trademarks and copyrights are instructive. The former cases reveal that "a controversy in respect of lands has never been regarded as presenting a Federal question merely because one of the parties to it has derived his title under an act of Congress." Shulthis v. McDougal, 225 U.S. 561, 570, 32 S.Ct. 704, 706, 56 L.Ed. 1205 (1912). As the Supreme Court recently explained, "[o]nce patent issues, the incidents of ownership are, for the most part, matters of local property law to be vindicated in local courts, and in such situations it is normally insufficient for 'arising under' jurisdiction merely to allege that ownership or possession is claimed under a United States patent." Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 676-77, 94 S.Ct. 772, 781-82, 39 L.Ed.2d 73 (1974) (citation omitted). Thus, although ownership of property is certainly a prerequisite to the accrual of property rights, and although the ownership of the property was a proposition of federal law, federal question jurisdiction was denied.
 
 
 39
 The trademark and copyright cases referred to above proceed on a similar theory. See Postal Instant Press v. Clark, 741 F.2d 256 (9th Cir.1984); T.B. Harms Co. v. Eliscu, 339 F.2d 823 (2d Cir.1964), cert. denied, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965). There, federal "arising under" jurisdiction was denied in cases seeking to enforce state-created property or contract rights despite the fact that those rights were triggered by--or in the case of contract rights, made possible by--the existence of a federal trademark or a copyright. In addition to the reasons set forth in the land patent cases, in Postal Instant Press we considered the fact that the involvement of federal case law was "incidental[ ]." Postal Instant Press v. Clark, 741 F.2d 256 at 257.
 
 
 40
 The case before us does not "arise under" federal law for reasons similar to those set forth in the cases we have just discussed. Just as the property and contract claims involved in the land patent, trademark and copyright cases apply to property or contracts generally and without regard to their genesis, the state bad faith law relied on here applies to persons with legal claims of any type. The federal element is involved only "incidentally." Id. Like the claim in Postal Instant Press, we think that the tortious bad faith count "fundamentally asserts [state] claims," id., and that federal jurisdiction is therefore lacking.
 
 
 41
 We arrive at the same conclusion if we look directly to the policies underlying the grant of original federal question jurisdiction, as we have done in other cases. See Keaukaha-Panaewa Community Association, 588 F.2d at 1226-27; League to Save Lake Tahoe v. B.J.K. Corp., 547 F.2d 1072, 1074 (9th Cir.1976) (both citing Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). The "compass" Justice Cardozo referred to in Gully, 299 U.S. at 118, 57 S.Ct. at 100, was designed to point courts to the types of cases most deserving of federal attention. To identify those cases, we should have in mind the principal purpose of the grant of original federal question jurisdiction--to afford plaintiffs a sympathetic and knowledgeable forum for the vindication of their federal rights. See supra at p. 639. There would appear to be little need for such a forum when the right involved in a case was conferred by the state. State courts are presumably just as sympathetic to and knowledgeable about rights conferred by the state. When there is a federal element to a state claim, the presence of that element may, theoretically at least, raise the possibility of state court hostility to the entire claim. However, when the federal element is of the type involved here--that is, when the state law requires plaintiff to establish the validity or colorability of a related federal right for which there is already a federal remedy--the doctrine of pendent jurisdiction would in most cases operate to allow the state claim to be brought into federal court as pendent to the federal one. By and large, the only instances in which the state claim could not be brought into federal court as a result of the doctrine of pendent jurisdiction would be those involving federal claims, such as this one, that Congress has relegated to the state courts. With regard to these claims, however, the theoretical problem noted above is not a real problem because by relegating the underlying federal claim to state court Congress has recognized that the state forum is an appropriate one for resolution of the federal claim. A fortiori, the state forum should be adequate for the related state claim.[8]
 
 
 42
 B. Limitations Imposed by 28 U.S.C. Sec. 1337(a)'s Jurisdictional Amount Proviso.
 
 
 43
 Finally, we are persuaded that federal jurisdiction over the state claims involved here is foreclosed by the jurisdictional amount provision of section 1337. As we noted above, when the federal element of a state claim is a related federal claim over which federal jurisdiction is lacking, affording federal jurisdiction over the state claim would not further the purposes underlying the rules governing original federal jurisdiction. Deeming such a state claim to "arise under" federal law would in effect make a difference only with regard to those cases involving federal claims that Congress has decided should be litigated in the state rather than the federal court. Such a rule would be anomalous indeed.
 
 
 44
 The anomaly would be particularly disturbing when the federal element consists of a Carmack Amendment claim. Section 1337 of title 28 contains a proviso dealing specifically with Carmack Amendment claims. It provides that "the district courts shall have original jurisdiction of an action brought under [the Carmack Amendment], only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs." 28 U.S.C. Sec. 1337(a) (Supp. V 1981) (emphasis added). Section 1337(a)'s jurisdictional amount requirement relating to Carmack Amendment claims is more stringent than other jurisdictional amount requirements; whereas, ordinarily, separate federal claims against the same defendant may be aggregated to meet the jurisdictional amount requirement in section 1337(a) precludes aggregation of separate Carmack Amendment claims. See also discussion infra at Section IV. Section 1337(a)'s jurisdictional amount provision was plainly intended to relegate to state courts Carmack Amendment claims for less than $10,000. See S.Rep. No. 117, 95th Cong., 2d Sess. 49-50, reprinted in 1978 U.S. Code Cong. & Ad. News 3569, 3611-13. It would be inconsistent with that purpose to construe section 1337 as conferring jurisdiction over state-law claims merely because they include a federal element involving a Carmack Amendment claim of less than $10,000. Because the federal element here is a Carmack Amendment claim for only $2,500, the state claims do not "arise under" section 1337.
 
 
 45
 Thus, even if we assumed that a state claim that includes a federal claim as tangential as the one here involved would ordinarily be deemed to "arise under" federal law, we would conclude that since the federal claim is a Carmack Amendment claim for less than the jurisdictional amount, federal jurisdiction is absent.
 
 
 46
 IV. Pendent Jurisdiction and Aggregation of Claims.
 
 
 47
 In this section we consider whether section 1337(a)'s jurisdictional amount requirement may be satisfied by aggregating the amount of plaintiffs' claims under state law with the amount claimed under the Carmack Amendment. We conclude that it may not.
 
 
 48
 The amount-in-controversy requirement was added to section 1337 in 1978. In adding that requirement, Congress stated all but explicitly that the requirement was to be interpreted consistently with the similar requirements that existed then in the diversity and general federal question statutes. See 28 U.S.C. Sec. 1332 (1982); 28 U.S.C. Sec. 1331 (1976) (amended in 1980 to remove the amount-in-controversy requirement, Pub.L. No. 96-486, 94 Stat. 2369); S.Rep. No. 117, 95th Cong., 2d Sess. 49-51, reprinted in 1978 U.S.Code Cong. & Ad.News 3569, 3612-13 (stating that the absence of a jurisdictional amount requirement in section 1337 "is a basic inconsistency with diversity and Federal question jurisdiction" and that the addition of the requirement to section 1337 was "intended to ... add consistency to Federal jurisdictional requirements"); see also Bucci v. Allied Van Lines, Inc., 548 F.Supp. 189, 192 (W.D.Pa.1982). In interpreting section 1337, therefore, we refer to rules developed in diversity and general federal question cases. Those cases make it entirely clear that in a case between nondiverse parties a state-law claim over which there is no independent basis for federal jurisdiction may never be aggregated with a federal claim in order to reach the jurisdictional amount.
 
 
 49
 In a case between nondiverse parties, the doctrine of pendent jurisdiction provides the only basis for federal jurisdiction over a state-law claim. It has long been established, however, that that doctrine operates to allow a federal court, under certain circumstances, to decide claims over which the court does not independently have jurisdiction only if those claims are related, in given ways, to a claim over which the court does independently possess jurisdiction. See Siler v. Louisville & Nashville Railroad, 213 U.S. 175, 191, 29 S.Ct. 451, 454, 53 L.Ed. 753 (1909); Hurn v. Oursler, 289 U.S. 238, 243-46, 53 S.Ct. 586, 588-89, 77 L.Ed. 1148 (1933); United Mine Workers v. Gibbs, 383 U.S. 715, 722-25, 86 S.Ct. 1130, 1136-38, 16 L.Ed.2d 218 (1966); Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 370-73, 98 S.Ct. 2396, 2400-02, 57 L.Ed.2d 274 (1978); J. Moore & J. Lucas, 1 Moore's Federal Practice p 0.90 (2d ed. 1981); 3A id. at p 18.07 (2d ed. 1977); 6 Federal Practice and Procedure Sec. 1588; 14 id. at Sec. 3704. The federal court acquires its power over the claim otherwise beyond its cognizance only if the court has previously properly been seized of jurisdiction. The federal court's jurisdiction over the state-law claim is entirely derivative of its jurisdiction over the federal claim. See 6 id. Sec. 1588, at 816; Note, The Evolution and Scope of the Doctrine of Pendent Jurisdiction in the Federal Courts, 62 Colum.L.Rev. 1018, 1019 (1962).
 
 
 50
 If we found jurisdiction in this case by aggregating plaintiffs' state law claims with their federal claim, we would be turning the traditional notion of pendent jurisdiction on its head. Because pendent jurisdiction is derivative, it makes no sense to speak of pendent jurisdiction until after a court has independently acquired jurisdiction over a federal cause of action. The doctrine of pendent jurisdiction has never been thought to play any role whatsoever in a federal court's initial acquisition of jurisdiction over a case. If we allowed aggregation of the state and federal claims here, however, we would be holding that a claim may be "pendent" to a claim over which federal jurisdiction is lacking because of a failure to meet the jurisdictional amount requirement; if the "pendent" state-law claim and the federal claim, considered together, met the jurisdictional amount, the federal courts would, under such a holding, have jurisdiction even though federal jurisdiction over both claims considered separately would be lacking. Under such a rule, the state claim would provide an integral and necessary ingredient of the court's jurisdiction over the federal claim. We find no support in the cases for such a radical departure from well-established notions of pendent jurisdiction.
 
 
 51
 Aggregation of claims has never been thought of as an exception to the doctrine of pendent jurisdiction. Rather, as an examination of the cases makes clear, aggregation of claims is simply a device for allowing the assertion of federal jurisdiction over two or more claims, each of which properly falls within the jurisdiction of the federal courts except for the fact that its amount is insufficient. What is required in such cases is that the combined amount of the claims meets the federal jurisdictional standard. In other words, parties are permitted to aggregate all claims over which the court would independently have jurisdiction but for the jurisdictional amount requirement. Thus, a single plaintiff may aggregate as many claims as he has against a single diverse defendant in order to meet the jurisdictional amount, even if no single claim reaches that amount. See, e.g., Bullard v. City of Cisco, 290 U.S. 179, 187-90, 54 S.Ct. 177, 180-81, 78 L.Ed. 254 (1933); Combined Communications Corp. v. Seaboard Surety Co., 641 F.2d 743 (9th Cir.1981); Stone v. Stone, 405 F.2d 94, 96 (4th Cir.1968), cert. denied, 409 U.S. 1000, 93 S.Ct. 315, 34 L.Ed.2d 261 (1972); Alberty v. Western Surety Co., 249 F.2d 537 (10th Cir.1957); Pearson v. National Society of Public Accountants, 200 F.2d 897 (5th Cir.1953); Simecek v. United States National Bank of Omaha, 91 F.2d 214 (8th Cir.1937); J. Moore & J. Lucas, 1 Moore's Federal Practice p 0.97 (2d ed. 1975); 14 Federal Practice and Procedure Sec. 3704. Similarly, a plaintiff may aggregate several federal question claims against a single defendant in order to reach the jurisdictional amount. See 6 id. at Sec. 1588. And the right of aggregation exists even when one claim is based on diversity of citizenship and one or more on the presence of a federal question. See 14 id. Sec. 3704, at 412-13; Hales v. Winn-Dixie Stores, Inc., 500 F.2d 836, 846 (4th Cir.1974).
 
 
 52
 We have found no case, however, in which federal jurisdiction was created by aggregating a state-law claim with a federal claim falling short of the jurisdictional amount. Instead, formulations of the aggregation rule by leading commentators--at least those that are not ambiguous, cf. infra note 9-- preclude aggregation in cases such as this one. Professors Wright and Miller, for instance, state that "[t]he general rule is that in an action involving a single plaintiff and a single defendant, when the basis of jurisdiction is diversity of citizenship or when each of the claims sought to be joined involves a federal question, a party may aggregate all the claims he has against an opposing party in order to satisfy the requisite jurisdictional amount." 6 Federal Practice & Procedure Sec. 1588, at 805 (citations omitted; emphasis added); see also 14 id. Sec. 3704, at 412-13 ("When plaintiff joins several claims against the defendant, the general rule ... is that the value of all the claims can be added together in determining whether the requisite jurisdictional amount exists. This right of aggregation exists even though one of the claims may be based on diversity of citizenship jurisdiction and one or more may be based on federal question jurisdiction." (citations omitted)); Comment, Federal Jurisdiction--A Plaintiff Can Aggregate His Federal and Nonfederal Claims Against the Same Defendant in Order to Meet the Jurisdictional Amount Requirement for Federal Diversity Jurisdiction, 53 Tex.L.Rev. 604, 605 (1975) ("[The] aggregation doctrine provides that when diversity of citizenship exists or all claims are federal, a single plaintiff may combine his claims against a single defendant to meet the matter-in-controversy requirement." (citations omitted)).[9] In fact, Professors Wright and Miller have described the relationship between the rule concerning aggregation of claims and the doctrine of pendent jurisdiction in plain terms: "[U]nlike the aggregation of totally unrelated claims, none of which meet the requisite amount, a claim joined under the pendent jurisdiction doctrine is brought into the action only when the court's power over the main claim gives it jurisdiction over the entire controversy and the pendent claim bears a strong factual relationship to the main claim." 6 Federal Practice and Procedure Sec. 1588, at 816.
 
 
 53
 The rationale for allowing aggregation only of claims that independently satisfy all jurisdictional requirements but the amount-in-controversy requirement is evident. Congress has determined that certain types of claims merit federal attention; federal claims and claims between citizens of different states are two such types. Congress has also determined, however, that some such claims merit federal attention only when they are of a given magnitude. When a plaintiff has two claims each of which is of a type that merits federal attention, but neither of which by itself meets the jurisdictional amount requirement, he is allowed to combine the claims to establish that his case is of the magnitude that merits federal attention. The idea is that two such separate claims are the equivalent of one claim meriting federal attention of the combined magnitude. Although one may quarrel with the wisdom of allowing a plaintiff to come into federal court by combining his claims in that way, see 14 id. at Sec. 3704, one cannot say that the rule is devoid of logic.
 
 
 54
 The same cannot be said, however, of a rule allowing parties to come into federal court with a claim that is of the type that merits federal attention, but is of insufficient magnitude, and a claim that is not of the type that merits federal attention. However, one looks at two such disparate claims, one is left with a case that does not merit federal attention.
 
 
 55
 In sum, we think it clear that federal jurisdiction cannot be created by aggregating a state-law claim with a federal claim that does not meet the jurisdictional amount requirement--even if the state-law claim arises out of the same nucleus of operative facts as the federal claim. If the district court relied on the aggregation doctrine, it either misinterpreted the law or read a different rule into the jurisdictional amount proviso of section 1337. As we have already stated, however, the legislative history of section 1337 makes it plain that Congress intended that the proviso be interpreted consistently with other jurisdictional amount requirements. Moreover, the only difference between section 1337 and other statutes containing amount-in-controversy requirements makes the requirement more stringent in section 1337 cases. Section 1337 requires that "the matter in controversy for each receipt or bill of lading " exceed $10,000. 28 U.S.C. Sec. 1337(a) (Supp. V 1981) (emphasis added). That language was obviously intended to narrow federal jurisdiction in Carmack Amendment cases by prohibiting aggregation of Carmack Amendment claims arising from separate bills of lading. See Pillsbury Co. v. Atchison, Topeka and Santa Fe Railway, 548 F.Supp. 28 (D.Kansas 1982); cf. 14 Federal Practice and Procedure Sec. 3704 (ordinarily, separate federal claims may be aggregated to meet jurisdictional amount). Clearly, language intended to prevent aggregation of separate Carmack Amendment claims if they relate to different bills of lading cannot support a reading of 1337 as permitting aggregation of Carmack Amendment claims with state-law claims. In fact, the additional language in section 1337 would appear a fortiori to preclude any such reading.
 
 CONCLUSION
 
 56
 Federal jurisdiction over this case was lacking. The presence of a federal preemption defense cannot support federal jurisdiction. Nor under the circumstances was the district court at liberty to recharacterize the state law claims as federal claims. In addition, the state law claims did not "arise under" federal law under any of the asserted interpretations of sections 1331 or 1337. Finally, section 1337's jurisdictional amount requirement cannot be satisfied by aggregating the amounts plaintiffs claim under state law with the amounts claimed under the Carmack Amendment. Because federal jurisdiction over this case was lacking whether or not plaintiffs' state-law claims were preempted, the district court should have granted plaintiffs' motion to remand the entire action to state court without deciding the preemption issue.
 
 
 57
 REVERSED AND REMANDED TO DISTRICT COURT WITH INSTRUCTIONS TO REMAND TO STATE COURT.
 
 
 58
 SNEED, Circuit Judge, concurring in the result:
 
 
 59
 I concur in the result reached by the opinion of the majority, and I acknowledge the error of my original opinion in this case.
 
 
 60
 Thus, I agree that the "well pleaded complaint" rule precludes removal of claims based on state law that the defendants assert has been preempted by federal law. I also agree that the plaintiffs have alleged state law claims that may or may not have been preempted by federal law, and that the plaintiffs' federal claim as pleaded is under the $10,000 jurisdictional amount fixed by 28 U.S.C. Sec. 1337(a).
 
 
 61
 As Judge Reinhardt's opinion makes clear, the distinction between the non-removable "well-pleaded complaint" cases and the removable "artful pleading" cases is a difficult one. I am now convinced, however, that under our decisions the plaintiffs are entitled to the benefit of the former doctrine and spared the burden of the latter. The state claims of tortious bad faith in handling the plaintiffs' damage claim and of intentional infliction of emotional distress are sufficiently distinct from a claim of property damage based on the bill of lading to justify refusing to apply the doctrine of the artful pleading cases.
 
 
 62
 Whether such claims had been preempted, contrary to my initial impression, should be decided by the state court on remand, not by the federal court. I also agree with Judge Reinhardt when he concludes this is an improper case to permit aggregation of the claims to meet the jurisdictional amount required by 28 U.S.C. Sec. 1337(a).
 
 
 63
 I do not join Judge Reinhardt's opinion because of relatively minor substantive differences with certain portions of the opinion, and because of its implications with respect to the merits of the defendants' preemption argument.
 
 
 
 *
 Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 As used in this opinion the term "federal claim" means a claim arising under federal law, whether or not it meets the jurisdictional amount. Cf. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 372 n. 11, 98 S.Ct. 2396, 2401 n. 11, 57 L.Ed.2d 274 (1978) (using the term "federal claim" to mean a claim over which there is an independent basis of jurisdiction)
 
 
 [2]
 Appellants seek only $2,500 under section 11707. Appellants also raise a claim for attorney's fees under section 11711. 49 U.S.C. Sec. 11711(d) (Supp. V 1978). They seek only $3,000 in attorney's fees. Even if the attorney's fees request could be aggregated to the Carmack Amendment claim to reach the jurisdictional amount, but cf. 28 U.S.C. Sec. 1337 (requiring that the "matter in controversy for each receipt or bill of lading " exceed $10,000 (emphasis added)); infra at Section III.B., appellants' claim would fall short of the jurisdictional amount by $4,500.01
 
 
 [3]
 We note that the artful pleading doctrine applies in other contexts as well. In fact, we have recently chided a party in a position similar to appellees' for seeking injunctive and declaratory relief against prosecution in state court of a state claim that it alleged was preempted. We said that the party "would not be permitted by artful pleading to anticipate a defense to a state law claim based on federal law and thus bring within federal jurisdiction a case that otherwise could not be heard there." Alton Box Board Co. v. Esprit de Corp., 682 F.2d 1267 (9th Cir.1982)
 
 
 [4]
 Commentators have offered additional explanations, as well as criticisms, of our artful pleading cases. See 1A J. Moore & B. Ringle, Moore's Federal Practice p 0.160 n. 2 (suggesting that the holding in Johnson v. England, supra, was based on the fact that "federal instrumentalities" had exclusive jurisdiction over the claim involved there); Note, Intimations of Federal Removal Jurisdiction in Labor Cases: The Pleadings Nexus, 1981 Duke L.J. 743, 753-79 (criticizing Fristoe, supra, and explaining that in Johnson v. England, supra, the court was simply interpreting an ambiguous complaint and trying to determine whether the plaintiff was in fact relying on federal law). We express no opinion concerning these explanations
 
 
 [5]
 We recognize that parties may not confer subject-matter jurisdiction on federal courts by agreement. That is not to say, however, that the parties' agreement as to the legal issues involved in a case may never be considered. See Franchise Tax Board v. Construction Laborers Vacation Trust, 103 S.Ct. at 2848 (When the law that creates the cause of action is state law, "original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one or the other claim is 'really' one of federal law." (emphasis added)). We think that the parties' agreement as to the legal issues the case raises is relevant to determining whether removal was proper in this case. Moreover, as we noted at the outset, appellees have the burden of establishing the existence of removal jurisdiction, supra at p. 639
 
 
 [6]
 We do not suggest that the requirements we have discussed are the only ones applicable. If, as the Supreme Court has suggested, the doctrine applies only when plaintiff has a "fraudulent purpose," see supra at p. 642, then it may, for example, apply only when the preemption issue and the question of whether a federal cause of action exists are both so clear cut as to call into question the plaintiff's good faith in asserting the state claim. Certainly, if there is some question as to whether a state claim has been preempted or whether a federal claim exists, a fraudulent purpose cannot be inferred from the fact that only a state claim was presented. When plaintiff can have a good faith belief that a state claim has not been preempted or that no federal claim exists, he cannot be said, by alleging a state claim, to have manifested a fraudulent purpose to defeat removal
 We do not decide whether the artful pleading doctrine applies only when it is clear that federal law preempts the asserted state claim and that a federal claim is available. Our earlier discussion regarding the question of the lack of a federal remedy makes any further reference to that point unnecessary here. We note, however, that it is far from clear that the state-law claims plaintiffs assert here have been preempted.
 
 
 [7]
 We assume for purposes of this opinion that the torts alleged by the plaintiffs exist under California law. Defendants contend in their brief that California does not in fact confer the right or the remedy plaintiffs assert. If so, then defendants should prevail on the merits. However, if plaintiffs' state claims do not exist, federal jurisdiction cannot be based on the proposition that federal law is an essential element of state claims
 
 
 [8]
 The Supreme Court in Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), mentioned an additional requirement: when the cause of action was created by state law, the federal element must be a disputed question of federal law. Id. 103 S.Ct. at 2848. Because we have disposed of this case on other grounds, we need not decide whether this additional requirement was satisfied. We do note, however, that there does not appear to have been a dispute concerning the existence of a claim under the Carmack Amendment. Only the extent of the damages recoverable appears to have been at issue
 
 
 [9]
 The aggregation rule is also often framed by reference to the rules concerning joinder: all claims that may properly be joined under rule 18, of the Federal Rules of Civil Procedure may be aggregated in order to reach the jurisdictional amount. See 14 Federal Practice and Procedure Sec. 3704; 1 J. Moore & J. Lucas, Moore's Federal Practice p 0.97 (2d ed. 1975); 36A C.J.S. Federal Courts Sec. 310(6)(a) (1960). Rule 18, read in conjunction with rule 82, permits a plaintiff to join against a defendant all claims over which the court has jurisdiction. Fed.R.Civ.P. 18(a); Fed.R.Civ.P. 82 ("These rules shall not be construed to extend or limit the jurisdiction of the United States district courts ...."). United States v. United Pacific Insurance Co., 472 F.2d 792, 794 n. 5 (9th Cir.), cert. denied, 411 U.S. 982, 93 S.Ct. 2273, 36 L.Ed.2d 958 (1973); see generally 3A J. Moore & J. Lucas, Moore's Federal Practice p 18.07[1.-1] (2d ed. 1975); 6 Federal Practice and Procedure Sec. 1588, at 807. As noted earlier, a federal court has jurisdiction over a state-law claim between nondiverse parties only if it has pendent jurisdiction over the claim. And, in a nondiversity case, a federal court can have pendent jurisdiction over a claim only if it has independently obtained jurisdiction over a federal claim
 The Advisory Committee Notes to the 1966 amendment to rule 18(a) state that rule 18(a) "deals only with pleading" and "does not purport to deal with questions of jurisdiction or venue which may arise with respect to claims properly joined as a matter of pleading." Fed.R.Civ.P. 18 advisory committee note to 1966 amendment. That language seems to indicate that jurisdictional requirements should not be considered in determining whether claims have been properly joined under rule 18; jurisdictional limitations apply, but not by virtue of rule 18. Such a reading of the rule might support the argument that, under the aggregation rule as stated supra this note, claims may be aggregated to meet the amount-in-controversy requirement regardless of whether the court has jurisdiction over them. Such an argument, however, is plainly untenable. No one would suggest in a nondiversity case, any state-law claim, no matter how unrelated, may be aggregated to a federal claim in order to satisfy the jurisdictional amount requirement. Plainly, the commentators cited supra were taking jurisdictional limitations into account when they referred to rule 18. See also Fed.R.Civ.P. 18(a) advisory committee note 3 ("The provisions of this rule for the joinder of claims are subject to Rule 82 (Jurisdiction and Venue Unaffected).").
 Of course, if the commentators intended that all jurisdictional requirements to be taken into account, the rule they stated would be meaningless: only those claims that independently met the jurisdictional amount requirement could then be aggregated. What they may have meant is that claims that could be joined under rule 18(a) without regard to the jurisdictional amount requirement may be aggregated in order to satisfy that requirement. Insofar as such a formulation would allow aggregation of a state-law claim with a federal claim that arises from the same nucleus of operative facts, however, it conflicts with the well-settled principle of pendent jurisdiction described above. We do not believe that those commentators had such a case in mind when they stated their rule of aggregation. First, none of the commentators cites a single case allowing aggregation under such circumstances. More important, none of the commentators recognizes a conflict between the rule of aggregation, as he enunciates it, and the principle of pendent jurisdiction described above. Indeed, some state all but explicitly that there is no conflict. See, e.g., 6 Federal Practice and Procedure Sec. 1588, at 816. We are therefore confident that they would not quarrel with the following formulation: all claims by a single plaintiff against a single defendant that could be joined under rule 18(a) if they independently met all jurisdictional requirements other than the amount-in-controversy requirement may be aggregated in order to reach the jurisdictional amount. That is the rule stated in the text.