**UNITED JERSEY BANKS; United Jersey Bank/Southwest; Constellation Bancorporation; the National State Bank; Horizon Bancorp; Princeton Bank; New Jersey National Corporation; New Jersey National Bank; United Counties Bancorporation; and United Counties Trust Company, Appellants**

**v.**

**Mary Little PARELL, Commissioner of Banking of the State of New Jersey; First Fidelity Bancorporation; First Fidelity Bank, N.A., South Jersey; Community Bancshares Corporation; and National Bank and Trust Company of Gloucester County.**

No. 85–5525.

United States Court of Appeals,
Third Circuit.

Argued Nov. 18, 1985.

Decided Feb. 14, 1986.

Rehearing and Rehearing In Banc
Denied March 11, 1986.

William S. Greenberg (argued), James F. Schwerin, Greenberg & Prior, Princeton, N.J., for appellants.

Irwin I. Kimmelman, Atty. Gen. of New Jersey, James J. Ciancia, Asst. Atty. Gen., Robert M. Jaworski, Deputy Atty. Gen., Barbara S. Goldsmith (argued), Trenton, N.J., for appellee Mary Little Parell, Commissioner of Banking of the State of N.J.

Eugene J. Metzger (argued), Samuel Shepard Jones, Jr., Donald L. Hardison, Metzger, Shadyac & Schwarz, Washington, D.C., John D. Schupper, Stephen N. Dermer, Gregory G. Campisi, Lowenstein, Sandler, Brochin, Kohl, Fisher, Boylan & Meanor, Roseland, N.J., for appellees First Fidelity Bancorporation; First Fidelity Bank, N.A., South Jersey; Community Bancshares Corp.; and National Bank and Trust Co. of Gloucester County.

Before HIGGINBOTHAM, SLOVITER and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

This case presents a significant issue regarding the scope and propriety of removal to federal court on the basis of what is essentially a claim of federal preemption. To reach that issue, we must first traverse the maze of state and federal legislation on bank mergers, acquisitions and bank holding companies.

Plaintiffs are attempting to use state law to prevent a merger between two nationally chartered banks. The plaintiffs (hereafter "United Jersey") are five New Jersey bank holding companies and the subsidiary banks of each. The defendants are the merging banks, First Fidelity Bank, N.A., South Jersey, and the National Bank & Trust Company of Gloucester County ("NB & T"), and their respective parent holding companies, First Fidelity Bancorporation and Community Bancshares Corporation. All four defendants will be collectively referred to as "First Fidelity" unless otherwise noted. United Jersey also sued the New Jersey Commissioner of Banking, Mary Little Parell, seeking to enjoin her to exert her authority over the merger.

Plaintiffs originally filed their action in New Jersey state court, but defendants removed it to the United States District Court for the District of New Jersey. The district court denied United Jersey's motion to remand and thereafter dismissed the action as premature. The principal issue before us is whether federal jurisdiction existed to support removal.

## I.

The transaction at issue in this case was structured as a merger between two nationally chartered banks.[1] NB & T was merged into First Fidelity Bank. As consideration, NB & T shareholders received shares of First Fidelity's parent corporation, First Fidelity Bancshares. After being presented for verification, NB & T's shares ceased to exist without actually changing hands. Prior to the transaction, NB & T's parent corporation, Community Bancshares, also ceased to exist.

Pursuant to its obligations under the federal banking laws, First Fidelity filed a merger application with the Comptroller of the Currency, who must approve all mergers of insured banks in which the resulting bank is a national bank. *See* 12 U.S.C. § 1828(c)(2)(A). Three of the plaintiffs in this case filed formal protests against the merger with the Comptroller. As required by 12 U.S.C. § 1828(c)(4), the Comptroller requested reports from the Department of Justice and the Board of Governors of the Federal Reserve System concerning the anticompetitive effect of the merger. Both filed reports which predicted no significant anticompetitive effects from the merger. On August 29, 1985, the Comptroller approved the merger.

Under the Federal Bank Merger Act, anyone seeking to challenge a merger between nationally chartered banks on the ground that the merger violates either the Sherman or Clayton Acts must file suit within thirty days after the Comptroller's

---

1. After the briefs were filed in this case, the parties informed the court that the merger had been consummated. We assume for purposes of this decision that the merger took place as described in the documents submitted by the parties.

At the request of the appellants, this court had expedited briefing and argument in this case. However, the parties delayed two months in providing the court with the transcript of the argument that it had requested.

approval. 12 U.S.C. § 1828(c)(6) & (7)(A).[2] If no such action is filed, the Comptroller's decision becomes final, and the merger may be consummated. *Id.* § 1828(c)(6) & (7)(A).

In this case, no challenge under the federal antitrust laws was filed during the thirty-day limitation period. On September 29, 1985, the limitation period expired. Immediately thereafter the merger took place. Plaintiffs concede that they deliberately chose not to challenge the merger under federal law.

However, even before the Comptroller's decision, plaintiffs sought to use state law to block the merger by petitioning the New Jersey Commissioner of Banking, Parell, to hold a hearing on the merger. In a letter dated July 1, 1985, the Commissioner held that she did not have jurisdiction over this merger, because, in her view, New Jersey had disclaimed any intention to regulate mergers between national banks. United Jersey appealed this denial to the state courts, but no decision had been rendered at the time this case was briefed.

Using yet another tactic, United Jersey filed this suit in New Jersey Superior Court, Chancery Division, alleging two causes of action under state law. The theory of United Jersey's complaint was that despite the form of the merger, it actually was an acquisition of NB & T by First Fidelity Bancshares, the holding company. The first count of United Jersey's complaint alleged that the transaction violated a provision of the New Jersey Bank Holding Company Act, N.J.Stat.Ann. § 17:9A–345(a). In general terms, this statute prohibits any company owning more than 25% of the stock of any bank in New Jersey from acquiring more than 10% of another New Jersey bank if the acquiring bank would then own more than 20% of the bank deposits in the state.[3] The complaint alleged that after the acquisition, the aggregate deposits of the resulting institution would exceed this 20% state imposed cap. Another section of the New Jersey banking laws, N.J.Stat.Ann. § 17:9A–347, allows companies to exceed this 20% deposits cap if the acquisition occurs by way of a merger.[4] United Jersey's complaint sought to avoid the force of this provision by arguing that it was counter to the policy expressed in § 345, and therefore, that the New Jersey legislature had repealed it by implication.[5]

United Jersey's complaint also charged that the merger would restrain commerce and tend to create a monopoly in violation of provisions of the New Jersey Antitrust Act, N.J.Stat.Ann. § 56:9–4. This statute disclaims regulation of "[t]he activities of any State or national banking institution to the extent that such activities are regulat-

---

**2.** The one exception to this limitation is that suits challenging mergers on the ground that they violate section 2 of the Sherman Act, 15 U.S.C. § 2, need not be filed in this thirty day "window". *See* 12 U.S.C. § 1828(c)(7)(C).

**3.** The statute provides as follows:
  Except as otherwise provided by sections 3 and 4 of this act, (a) No company which owns more than 25% of the stock of any bank located inside this State shall acquire ownership of more than 10% of the stock of another bank located inside this State if, at the time of such acquisition, or if, as a result of such acquisition, the company owns, or would own, more than 10% of the stock of each of two or more banks located inside this State, whose aggregate average deposits exceed 20% of the aggregate average deposits of all banks other than savings banks transacting business in this State as of the two call dates for which published figures are available next preceding such acquisition.

N.J.Stat.Ann. § 17:9A–345(a).

**4.** N.J.Stat.Ann. § 17:9A–347 provides:
  Nothing in this act shall prohibit a company from acquiring bank stock in excess of the limitation imposed by section 2 of this act, if such acquisition results from an exchange of stock resulting from the merger or consolidation of a bank with another bank or banks.

**5.** Specifically, United Jersey argues that the exception to § 345 contained in § 347 was inadvertently left in the statute when the New Jersey legislature amended § 345 in 1968 to allow partial ownership of banks by bank holding companies. According to United Jersey, leaving the § 347 exception intact effectively undermines the limitation in § 345. *See* Brief for United Jersey at 6. Whether the New Jersey legislature did intend to repeal § 347 is, of course, a question of state law.

ed ... by ... the Federal Government under the banking laws of the United States." N.J.Stat.Ann. § 56:9–5(b)(7). United Jersey's complaint argued, however, that the transaction had been structured to avoid federal regulation and, therefore, that this exemption did not apply.

The complaint sought relief in the form of a declaration that the New Jersey banking and antitrust laws applied to the merger and that the merger would violate these laws. United Jersey also sought an injunction against the consummation of the merger. Finally, United Jersey asked for a declaration that the Commissioner of Banking had authority over the merger and an injunction against the Commissioner prohibiting her from approving the transaction.

The corporate defendants removed the action to federal court.[6] At the same time, they moved to dismiss the complaint for failure to state a claim upon which relief could be granted. United Jersey then cross-moved for a remand to the state court.

The district court denied the petition to remand and granted the motion to dismiss. The court rejected United Jersey's charac-

terization of the transaction as an acquisition of a national bank by a holding company, and instead, characterized it as a merger between two national banks. The court interpreted a provision of the New Jersey banking laws, N.J.Stat.Ann. § 17:9A–148B,[7] which on its face applies only to mergers of state banks into national banks, as reflecting New Jersey's recognition that "mergers into national banks under national bank charters are beyond the power of the state to regulate." See App. at 30a.[8] The court concluded that the state has no role with respect to the merger and also rejected plaintiffs' efforts to bring the transaction under the federal Bank Holding Company Act which permits some continued state regulation. The court also held that no antitrust challenge to a merger between national banks could be stated under state law. Thus, according to the district court, " 'the [plaintiffs] necessarily [are] stating a federal cause of action....' " App. at 31a (quoting 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3722 at 271–273 (1985) (hereafter "Wright & Miller")). The

**6.** The Attorney General of New Jersey, representing the New Jersey Commissioner of Banking, refused to join the petition for removal. The Attorney General took the position that the complaint did not state a claim either under federal or state law. United Jersey argues that the Commissioner's failure to join the petition renders it fatally deficient and requires that the action be remanded to state court. *See Tri-Cities Newspaper, Inc. v. Tri-Cities Printing Pressmen & Assistants', Local 349,* 427 F.2d 325, 327 (5th Cir.1970) (all but "nominal" parties must join a petition for removal). Because of the view we take of the case, we need not decide this issue.

**7.** This statute provides as follows:

B. One or more banks may, without the approval of the commissioner or of any other officer, department, board or agency of this State, merge into or consolidate with a national banking association under the charter of such association, with the approval of the holders of at least ⅔ of the capital stock of each such bank entitled to vote. A majority of the directors of each such bank shall, within 10 days after such approval has been given, file in the department a certificate over their signatures that such approval has been given,

and that the bank intends to act in pursuance thereof. *Except as otherwise provided in subsection D. of this section, a merger or consolidation authorized by this subsection shall be effected solely in the manner and with the effect provided by applicable Federal law, and no such merger or consolidation shall be subject to sections 132 through 147 or to any other law of this State;* but a copy of the agreement or merger or consolidation certified by the comptroller of the currency shall be evidence, and may be recorded, as provided by section 138. Upon the taking effect of the merger or consolidation, the bank shall be deemed to have surrendered its charter.

N.J.Stat.Ann. § 17:9A–148(B) (emphasis added). For purposes of this section, the New Jersey banking laws define "bank" only to include state-chartered banks. *See* N.J.Stat.Ann. § 17:9A–1(1).

**8.** The Attorney General's brief agrees with plaintiffs that section 148(B) applies only to mergers of state banks into national banks, but also notes that the state banking laws do not grant the Commissioner of Banking any authority to regulate mergers between national banks. *See* Brief on Behalf of Mary Little Parell, Commissioner, New Jersey Department of Banking at 7.

court further stated that this was a case "in which the state law which plaintiffs invoke expressly indicates that Federal law controls the question they raise." App. at 32a. Therefore, federal jurisdiction existed and removal was proper.

With federal jurisdiction established, the court turned to First Fidelity's motion to dismiss. At the time of the district court's decision, the Comptroller of the Currency had not yet approved the merger. Thus, United Jersey's "necessarily" federal cause of action challenging the merger on federal antitrust grounds, which the court viewed as the only cause of action plaintiffs could assert, was premature and the court dismissed it.

In this appeal, United Jersey presses its contention that there is no federal jurisdiction to support removal of its complaint. In this argument, United Jersey is joined by the Attorney General of New Jersey, who in the alternative supports the district court's decision to dismiss if this court finds jurisdiction.

### II.

Appellants argue that removal was improper because their complaint filed in state court was based on state law claims. They argue that the district court erred in permitting removal on the basis of what was, in effect, a federal defense, i.e. defendants' contention that federal statutes rather than state law governs the merger of two national banks.

It is one of the settled principles of federal jurisdiction jurisprudence that the federal question must appear on the face of the complaint, and that federal jurisdiction cannot be created by anticipating a defense based on federal law. *Louisville & Nash-ville Railroad v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). An anticipated defense of federal preemption cannot provide a basis for removal, *see Trent Realty Associates v. First Federal Savings & Loan Association,* 657 F.2d 29, 34–35 (3d Cir.1981), expressly approved in *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 12 n. 11, 103 S.Ct. 2841, 2848, n. 11, 77 L.Ed.2d 420 (1983).

As the Supreme Court recently reaffirmed, where there is no diversity of citizenship between the parties, "the propriety of removal turns on whether the case falls within the original 'federal question' jurisdiction of the United States district courts ..." *Franchise Tax Board,* 463 U.S. at 8, 103 S.Ct. at 2846.[9] Federal question jurisdiction exists if the action "arises under" the "Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331.

To determine whether a case "arises under" federal law, a court must look to the allegations of the plaintiff's "well-pleaded complaint". *Franchise Tax Board,* 463 U.S. at 10, 103 S.Ct. at 2846. As generally interpreted, "[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Id.* at 10–11, 103 S.Ct. at 2846–2847 (quoting *Gully v. First National Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936)). *See also New Jersey State AFL–CIO v. New Jersey,* 747 F.2d 891, 892 (3d Cir.1984). A corollary of this rule is that the "plaintiff is master of his claim and may choose not to assert a federal right that is available and rely only on state law ..." 14A Wright & Miller § 3722 at 266–68 (citing *The Fair v. Kohler Die &*

---

**9.** Removal in this case is governed by 28 U.S.C. § 1441(a) & (b), which provide:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

*Speciality Co.*, 228 U.S. 22, 33 S.Ct. 410, 57 L.Ed. 716 (1913)).

Application of these principles to this case suggests that removal was improvident. United Jersey relied on state law in its complaint, which usually signifies that the claim does not arise under federal law. Not surprisingly, the issue is not as straightforward as the black letter law appears.

In *Franchise Tax Board*, Justice Brennan, writing for a unanimous court, referred to two situations where federal jurisdiction could be available even though plaintiff based its claim in state court on state law: (1) when "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims" or (2) when it appears that plaintiff's claim "is 'really' one of federal law." ` 463 U.S. at 13, 103 S.Ct. at 2848.

The parameters of the "substantial disputed question of federal law" situation are not easily drawn. In *Franchise Tax Board*, a state Board filed suit in state court against a trust administering an employee welfare benefit plan seeking damages for the trust's failure to honor the Board's levies on account of unpaid taxes by employee beneficiaries and seeking a declaratory judgment that the state's power to levy on funds held in trust was not preempted by ERISA. The Supreme Court held that removal of the action to federal court was improper, since it was not within the removal jurisdiction conferred by 28 U.S.C. § 1441. The Court recognized that the question of federal preemption was "a necessary element of the declaratory judgment claim" since the only questions in dispute between the parties concerned the rights and duties of the trustees under ERISA. The state Board could not obtain the declaratory relief it sought "without a construction of ERISA and/or an adjudication of its pre-emptive effect and constitu-

tionality—all questions of federal law." 463 U.S. at 14, 103 S.Ct. at 2849.

Nonetheless, the Court held that federal jurisdiction was unavailable even though the trust, had it so sought, could have filed in federal court the mirror image suit, one for a declaration of its rights and duties under ERISA.[10] The Court looked to the " 'current of jurisdictional legislation' " since 1875 "with an eye to practicability and necessity." *Id.* at 20, 103 S.Ct. at 2852 (quoting *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 673, 70 S.Ct. 876, 880, 94 L.Ed. 1194 (1950)). Careful examination of the framework of the Court's analysis of the "substantial, disputed question of federal law" issue, set forth in Part III A of that opinion, *see id.* 463 U.S. at 13–22, 103 S.Ct. at 2848–2853 manifests that the Court was not enunciating a new basis for federal jurisdiction but instead was reaffirming the traditional well-pleaded complaint test "until Congress informs us otherwise." *Id.* at 22, 103 S.Ct. at 2853.

■ Although the Court was cognizant that adherence to earlier principles that limit federal jurisdiction may produce "awkward results," particularly where the only question for decision is raised by a federal preemption defense, the Court reaffirmed the principles of *Skelly Oil Co. v. Phillips Petroleum Co.* that focus must be on the underlying cause of action as set forth in the well-pleaded complaint, and of *Gully v. First National Bank* that "a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby." 299 U.S. at 116, 57 S.Ct. at 99 *quoted in Franchise Tax Board*, 463 U.S. at 12, 103 S.Ct. at 2848. *See id.* at 22, 103 S.Ct. at 2853. Thus, it is not enough that there be a "substantial, disputed question of federal law." It is only if that question also "is a necessary element of one of the well-pleaded state claims" that federal jurisdiction can be found.

**10.** On the same day that it decided *Franchise Tax Board*, the Supreme Court held in *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890,

77 L.Ed.2d 490 (1983), that employers could bring a federal suit claiming that certain state laws were preempted by ERISA.

When viewed under the well-pleaded complaint test, the United Jersey complaint presents less, rather than more, basis for finding federal jurisdiction than did the complaint in *Franchise Tax Board*. United Jersey's first count alleges that, whatever its form, the transaction at issue is actually an acquisition of a bank, NB & T, by a holding company, First Fidelity Bancorporation, and that the New Jersey Bank Holding Company Act (which defines "bank" to include state and national banks, *see* N.J. Stat.Ann. § 17:9A–344(a)) prohibits the acquisition because the resulting deposits will exceed the statutory cap. The cause of action alleged patently is derived from state law. The second count alleges the acquisition violates the New Jersey Antitrust Act. As in the second count of the *Franchise Tax Board* complaint, this count refers to federal law not to establish its claim but merely to negate jurisdiction thereunder.

Neither count affords a basis for finding that plaintiffs' "right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties". *Franchise Tax Board*, 463 U.S. at 13, 103 S.Ct. at 2848. There may be some basis to agree with defendants that United Jersey's view of the state law is incorrect and will be so found. It is, however, for the state court to make the determination as to the applicability of its state law.

The second situation for finding federal jurisdiction referred to in *Franchise Tax Board*, i.e. where the state claim pleaded is "really one" of federal law, is not as difficult to apply because there is ample precedent to illustrate its scope. As explained by Justice Brennan, "it is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Board*, 463 U.S. at 22, 103 S.Ct. at 2853. This same principle has been referred to elsewhere as the "artful pleading" doctrine, under which a court will not allow a plaintiff to deny a defendant a

federal forum when the plaintiff's complaint contains a federal claim "artfully pled" as a state law claim. *See* 14A Wright & Miller § 3722 at 270; *Eitmann v. New Orleans Public Service, Inc.*, 730 F.2d 359, 365 (5th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984).

The Court in *Franchise Tax Board* distinguished the case before it from cases where the "real" nature of the claim is federal, which it illustrated by reference to *Avco Corp. v. Aero Lodge No. 735, International Association of Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). The complaint in *Avco* was filed in state court by an employer seeking to enjoin the union and its members from striking in violation of a "no-strike" clause in the collective bargaining agreement. Although the complaint did not invoke federal law, it was clear to the Court that the action "arose under" § 301 of the Labor Management Relations Act because of the powerful preemptive force of § 301 which displaced entirely any state cause of action for violation of a contract between an employer and a labor organization. As Justice Brennan explained "[a]ny such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Franchise Tax Board*, 463 U.S. at 23, 103 S.Ct. at 2853. In contrast, the suit filed by the Franchise Tax Board did not "arise under" ERISA since that statute gave the state no right to seek the relief it pressed.

Using similar reasoning, United Jersey's suit does not "arise under" any federal statute. The fact that United Jersey's claim under state law may be defeated because of the preemptive effect of federal banking laws does not mean that such federal laws provide the basis of the cause of action, as in the case of § 301 of the LMRA.

It appears that it was the artful pleading doctrine that was the basis of the district court's conclusion that federal jurisdiction existed in this case. That court referred to

*Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), the paradigmatic case of "artful pleading". The *Moitie* action which had been removed from state court tracked an earlier federal antitrust action by the same plaintiff that had been dismissed for failure to state a claim. In concluding in a footnote that there was federal jurisdiction over the removal action, the Court held that the claims had "sufficient federal character to support removal," and endorsed the "artful pleading" doctrine as a "settled principle." *Id.* at 397 n. 2, 101 S.Ct. at 2427 n. 2 (quoting 14A Wright & Miller § 3722 at 564–66 (1976)).

Unless applied with circumscription, the artful pleading doctrine may raise difficult issues of federal-state relations. An expansive application of the doctrine could effectively abrogate the rule that a plaintiff is master of his or her complaint. *Hunter v. United Van Lines,* 746 F.2d 635, 640 (9th Cir.1984), *cert. denied,* — U.S. ——, 106 S.Ct. 180, 88 L.Ed.2d 150 (1985). Those courts of appeal that have applied the doctrine have done so primarily in the context of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, not only because the extent of federal primacy is well established, *see Hillard v. Dobelman,* 774 F.2d 886, 887 (8th Cir.1985); *Mitchell v. Pepsi-Cola Bottlers, Inc.,* 772 F.2d 342, 344 (7th Cir.1985), but because all state law is displaced.

▮ Whatever the ultimate limits of the artful pleading doctrine, this case is governed by the general rule that federal jurisdiction will not be found when the complaint states a prima facie claim under state law. *See Guinasso v. Pacific First Federal Savings & Loan Association,* 656 F.2d 1364, 1367 (9th Cir.1981), *cert. denied,* 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982). First, this is not a case like *Moitie* in which the plaintiff first filed a lawsuit containing federal claims and then, after dismissal, sought to recast those claims under state law. Here, plaintiff has consistently sought to litigate state claims in state court. *Cf. Powers v. South Central United Food & Commercial Workers Unions and Employers Health & Welfare Trust,* 719 F.2d 760, 766 (5th Cir.1983). Indeed, in this case, United Jersey apparently has foregone its federal remedies to pursue relief in state court. Moreover, there is no indication in the record that United Jersey brought this state action to foreclose First Fidelity's access to a federal forum to litigate federal issues. *See* 14A Wright & Miller § 3722 at 266.

The district court seemed to rely on the "exclusivity" of federal law to displace both Count One of United Jersey's complaint alleging New Jersey's banking laws prohibited the transaction and Count Two alleging the transaction violated New Jersey's antitrust law. Although the district court disclaimed relying on federal preemption, that was the practical effect of its holding. The district court's action is thus irreconcilable not only with the holding in *Franchise Tax Board* but with the stream of authority in that Court and in the courts of appeals. Even though the preemptive effect of federal legislation has already been established, a state claim does not thereby "arise under" federal law nor is the state court without jurisdiction on that basis. For example, although the Natural Gas Act had already been held to preempt state law on the issue of wholesale natural gas price, the Court held that a contract price dispute filed in state court was not within the original jurisdiction of the federal courts. *Pan American Petroleum Corp. v. Superior Court,* 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961). It was immaterial that plaintiff could have elected to proceed on a federal ground. *Id.* 366 U.S. at 663, 81 S.Ct. at 1307. The state claims asserted "do not lose their character because it is common knowledge that there exists a scheme of federal regulation of interstate transmission of natural gas." *Id.*

Unlike federal labor relations law, the law with respect to bank mergers is no more "exclusively" federal than was the law with respect to interstate transmission of natural gas. In the case of labor relations, the entire field has been occupied by the federal statute, whereas in the other areas the nature and operation of the federal and state laws must be examined to

determine if they can operate compatibly. *See* Note, *Federal Preemption, Removal Jurisdiction and the Well-Pleaded Complaint Rule,* 51 U.Chi.L.Rev. 634, 664–66 (1984).

We need not decide whether a completely frivolous or baseless claim under state law would justify a federal court in dismissing on the merits rather than remanding. Whatever the ultimate decision on the merits, we are not faced with such a claim.

Under United Jersey's theory expressed in Count One, federal law does not displace state law. Arguably, a New Jersey court could find that the essence of this transaction is an acquisition and thus that the New Jersey Bank Holding Company Act applies. As the state points out, and as our recent decision in *Girard Bank v. Board of Governors of the Federal Reserve System,* 748 F.2d 838 (3d Cir.1984) recognizes, a transaction may have attributes of both a merger and a stock acquisition, and thereby be subject to review by more than one agency.

▮▮▮ In the context of bank holding company regulation, federal law explicitly preserves state law. *See* 12 U.S.C. § 1846. It is not determinative that United Jersey may not prevail in its contention that the New Jersey Bank Holding Company Act prohibits the transaction at issue. Federal jurisdiction does not depend on the merits of the plaintiff's complaint.

Significantly, defendant Parell, Commissioner of the New Jersey Department of Banking, who disagrees with United Jersey's claim on the merits, nonetheless agrees that removal was improper. After detailing the origins and operation of the dual banking system, her brief argues that

> [w]ith this background in mind, it becomes clear that plaintiffs' complaint *does* state a separate claim under state law, apart from any claim concerning the illegality of the bank merger; specifical-

ly, that the New Jersey BHCA prohibits the acquisition of [NB & T] Gloucester Bank by First Fidelity Bancorporation. If the plaintiffs are correct in their contention in this regard, and the State reiterates its conviction, expressed to the District Court, that they are *not,* it seems logically to follow that the State court would have jurisdiction either to enjoin the acquisition (without technically infringing upon the Comptroller's authority to rule upon the merger) or, at the very least, to declare what the New Jersey law means and how it applies, or does not apply, in the context of the instant controversy.

Brief of Appellee Parell at 11.

With respect to Count Two, although United Jersey's allegation that the transaction will violate the New Jersey Antitrust Act may seem tenuous in light of the explicit exemption from its prohibitions for the activities of banks to the extent such activities are regulated by federal law, it is not clear that the New Jersey courts would treat this as a case to which New Jersey law does not extend. Congress has allowed the states to retain extensive authority to legislate in the antitrust field. *See* 1 P. Areeda & D. Turner *Antitrust Law* ¶ 208 at 58 (1978). The New Jersey Supreme Court has specifically held that the New Jersey Antitrust Act is not preempted by federal law. *See State v. Lawn King, Inc.,* 84 N.J. 179, 191, 417 A.2d 1025, 1032 (1980). First Fidelity has not directed our attention to any New Jersey case that conclusively rejects the theory underlying the antitrust claim of Count Two of United Jersey's complaint.[11] In such a case, it should be for the New Jersey courts, in the first instance, to determine whether the count alleging violation of state antitrust law is without any facial validity.

Our conclusion that removal of United Jersey's action was improper does not

---

**11.** Other cases finding federal jurisdiction for state antitrust challenges are distinguishable. In *In re Wiring Device Antitrust Litigation,* 498 F.Supp. 79 (E.D.N.Y.1980), the state antitrust statute had been interpreted to apply only to intrastate commerce and the plaintiffs sought to claim violations of the state law based on inter-

state commerce. Similarly, in *Three J. Farms, Inc. v. Alton Box Board Co.,* 1979–1 Trade Cas. (CCH) ¶ 62,423 (D.S.C.1978), *rev'd on other grounds,* 609 F.2d 112 (4th Cir.1979), *cert. denied,* 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980), the plaintiff sued under a narrowly interpreted state law to redress wide ranging

mean that there are not good reasons to support the holding that the district court made. It may well be that federal courts should be appropriate removal fora when state actions will inevitably require decisions on federal law. However, as Justice Brennan stated, "for reasons involving perhaps more history than logic," *Franchise Tax Board,* 463 U.S. at 4, 103 S.Ct. at 2843, that choice is for Congress.

### III.

We conclude, therefore, that the district court did not have jurisdiction over this case, and thus that United Jersey's motion to remand was improperly denied. In so deciding, we of course express no opinion on the merits of United Jersey's state law claim.[12] Accordingly, the decision of the district court will be reversed and the case will be remanded to that court so that it can remand the action to the New Jersey Superior Court from which it was removed.

interstate anticompetitive behavior. In both cases federal class actions against the same defendants were already pending.

**12.** First Fidelity argues that the Comptroller's approval and the subsequent consummation of the merger rendered this case moot. In light of our holding that the district court had no subject matter jurisdiction, we do not reach the mootness issue. First Fidelity, of course, will be free to contend before the state court that this case is now moot.