908 F.2d 477
 59 USLW 2057, 1990-2 Trade Cases 69,099
 REDWOOD THEATRES, INCORPORATED, Plaintiff-Appellant,
v.
FESTIVAL ENTERPRISES, INC.; Paramount Pictures Corporation;
Gulf & Western, Inc.; Mann Theatres Corporation
of California, Defendants-Appellees.
 No. 89-15638.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 4, 1990.
Decided July 11, 1990.
 
 Lawrence Alioto, Alioto and Alioto, San Francisco, Cal., for plaintiff-appellant.
 Judith Z. Gold, and Gregory Gilchrist, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before GOODWIN, Chief Judge, CANBY and RYMER, Circuit Judges.
 GOODWIN, Chief Judge:
 
 
 1
 Redwood Theatres appeals the denial of its motion to remand this case to state court. Redwood originally filed its action in California Superior Court, alleging violations of the Cartwright Act, Cal.Bus. & Prof.Code Sec. 16720. Appellees removed the case to federal district court, contending that Redwood's complaint, properly construed, advanced claims implicating federal antitrust law and that the nationwide character of its motion picture distribution system warranted review of this case in a federal forum.
 
 
 2
 Concluding that haphazard state antitrust regulation could impose an impermissible burden upon the national licensing practices of the movie distribution industry, the district court denied Redwood's subsequent motion to remand, citing as authority its prior decision in TOC, Inc. v. United Artists Theatre Circuit, 631 F.Supp. 832 (N.D.Cal.1986). Redwood argues in this interlocutory appeal that the district court improperly invoked the "artful pleading" doctrine to recharacterize its claims as federal in nature and, accordingly, that federal subject matter jurisdiction does not exist in this case. We agree and reverse.
 
 
 3
 Redwood Theatres is a Nevada corporation which owns and operates a seven-screen motion-picture theatre in Modesto, California, and other theatres in various northern California towns. Festival Enterprises is a California corporation which, during the period of time relevant to this appeal, owned and operated a six-screen theatre in Modesto, as well as theatres in other parts of northern California. The Redwood and Festival theatres directly compete with each other, both for the films they show on their screens and the patronage of Modesto movie-goers.
 
 
 4
 Paramount Pictures is a major distributor of motion-picture films in the United States. Its parent corporation, Gulf Western, acquired the Festival circuit of theatres in 1986. Also that year, Gulf Western acquired the 384 screens operated by Mann Theatres. Gulf Western subsequently placed the Festival chain under Mann's management.
 
 
 5
 Redwood contends that Paramount has entered into unwritten agreements with Festival and Festival's successors, pursuant to which substantially all of the Paramount first-run product is licensed to the Festival theatres in northern California, including Modesto. Redwood argues that these agreements effectively foreclose it from showing a significant number of the better first-run pictures, thereby threatening the viability of its business and substantial elimination of competition in the exhibition of first-run motion pictures in Modesto.
 
 
 6
 In 1985, Redwood filed a complaint against appellees in California Superior Court alleging Cartwright Act violations in connection with films licensed between 1981-85[1] similar to those at issue here. That action was dismissed on summary judgment but reinstated on appeal by the California Court of Appeal, which held that the allegations raised in Redwood's complaint, if proved, presented a triable issue of an unreasonable restraint of trade under the Cartwright Act and therefore remanded the case for trial. Redwood Theatres, Inc. v. Festival Enterprises, Inc., et al., ("Redwood I"), 200 Cal.App.3d 687, 248 Cal.Rptr. 189 (1988). Appellees never sought removal of Redwood's first suit, but, after the decision in Redwood I was rendered against them, they petitioned for removal of this action to federal court.
 
 ARTFUL PLEADING DOCTRINE
 
 7
 In general, removal based on federal question jurisdiction is improper unless a federal claim appears on the face of a well-pleaded complaint. Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983); Gully v. First Nat'l Bank, 299 U.S. 109, 113, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). "The burden of establishing jurisdiction falls on the party invoking the removal statute [28 U.S.C. Sec. 1441(a) ], Hunter v. United Van Lines, 746 F.2d 635, 639 (9th Cir.1984), cert. denied, [474 U.S. 863,] 106 S.Ct. 180, 88 L.Ed.2d 150 (1985), which is strictly construed against removal." Sullivan v. First Affiliated Securities, 813 F.2d 1368, 1371 (9th Cir.), cert. denied, 484 U.S. 850, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987).
 
 
 8
 It is well established that "the party who brings a suit is master to decide what law he will rely upon," The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913), and "if he can maintain his claim on both state and federal grounds, he may ignore the federal question and assert only a state law claim and defeat removal." Sullivan, 813 F.2d at 1372 (citing, inter alia, 1 A.J. Moore & B. Ringle, Moore's Federal Practice, p 0.160[3.-3], at 231-32 (2d ed. 1986)).
 
 
 9
 There are, however, certain limited situations in which a court may look beyond the face of a plaintiff's complaint. Under the "artful pleading" doctrine, which this court has termed "a narrow exception to the straightforward rules of removal jurisdiction," Sullivan, 813 F.2d at 1372, a court may recharacterize a plaintiff's claims as federal if "the particular conduct complained of [is] governed exclusively by federal law." Hunter, 746 F.2d at 640; see also Ultramar Am. Ltd v. Dwelle, 900 F.2d 1412, 1415 (9th Cir.1990). Nevertheless, this court invokes the doctrine "only in exceptional circumstances," because doing so "raises difficult issues of state and federal relationships and often yields unsatisfactory results." Salveson v. Western States Bankcard Ass'n, 731 F.2d 1423, 1427 (9th Cir.1984) (emphasis added).
 
 
 10
 All the claims appearing on the face of Redwood's complaint involve alleged violations of California's antitrust statute, the Cartwright Act. While not contending that the Sherman Act preempts the Cartwright Act in toto, appellees argue that where an industry is primarily engaged in interstate commerce and would benefit from a national uniformity of antitrust law, then restraints upon that interstate trade fall within the exclusive jurisdiction of the Sherman Act and federal courts. The Supreme Court, however, has consistently held that "Congress intended the federal antitrust laws to supplement, not displace, state antitrust remedies," California v. ARC Am. Corp., 490 U.S. 93, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989); Watson v. Buck, 313 U.S. 387, 403, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941), and this court has observed that "[s]tate antitrust laws retain vitality in dealing with matters which significantly affect local interests, even if they also have interstate aspects." Salveson, 731 F.2d at 1427. Also, notwithstanding appellees' assertions, California courts have held that the Cartwright Act applies to transactions in interstate commerce. Id., citing Younger v. Jensen, 26 Cal.3d 397, 405, 605 P.2d 813, 818, 161 Cal.Rptr 905, 910 (1980).
 
 
 11
 In arguing their position, appellees cite Federated Dept. Stores v. Moitie, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), and Salveson as authority for the exercise of federal jurisdiction over antitrust actions despite a plaintiff's decision to file his complaint in state court and rely wholly on state-law provisions. Both cases are distinguishable from the facts presented here.
 
 
 12
 In Moitie, seven private antitrust actions were brought by plaintiff retail customers charging the owners of various department stores with price-fixing. The actions were consolidated in federal district court and subsequently dismissed for failure to state a claim under the Clayton Act. Plaintiffs in two of the actions attempted to refile their complaints in state court, making allegations similar to those made in the previous cases, but invoking only state-law remedies. The department store owners promptly removed the two cases to federal court, where they were dismissed on res judicata grounds. The Supreme Court approved the district court's dismissal of the plaintiffs' refiled claims and concluded that removal was proper where it appeared that the plaintiffs had "artfully" recast their claims under state law in order to gain a second shot at recovery. 452 U.S. at 397, 101 S.Ct. at 2427.
 
 
 13
 In Salveson, this court held that if a state claim is found upon removal to be an artfully pleaded federal claim which was previously before a federal court and dismissed, then res judicata is to be applied and the case dismissed again, with prejudice. 731 F.2d at 1432. Unlike the situations in Moitie and Salveson, Redwood has never previously filed an antitrust action in federal court and no res judicata defense is available to appellees.
 
 
 14
 In subsequent cases this court has emphasized that it will construe the holdings in Moitie and Salveson narrowly, out of respect for the purposes underlying the removal statute and plaintiffs' prerogatives to choose the forum and legal principles governing their complaints. See Sullivan, 813 F.2d at 1376; see also United Jersey Banks v. Parell, 783 F.2d 360, 368 (3d Cir.), cert. denied, 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 979 (1986) ("[u]nless applied with circumspection, the artful pleading doctrine may raise difficult issues of federal-state relations. An expansive application of the doctrine could effectively abrogate the rule that a plaintiff is master of his or her complaint") (citing Hunter, 746 F.2d at 640).
 
 
 15
 In Sullivan, for example, we interpreted Moitie "as limited to removal of state claims precluded by the res judicata effect of a federal judgment," emphasizing that such a construction "squares our decisions in Salveson, permitting removal in the res judicata context, with Sugar Antitrust Litigation [In re Sugar Antitrust Litigation, 588 F.2d 1270 (9th Cir.1978), cert. denied, 441 U.S. 932, 99 S.Ct. 2052, 60 L.Ed.2d 660 (1979) ], denying removal in the context of parallel state and federal litigation, and comports with our policy of invoking the artful pleading doctrine 'only in exceptional circumstances.' " 813 F.2d at 1376 (quoting Salveson, 731 F.2d at 1427); see also Ultramar, 900 F.2d at 1415 (reiterating this court's interpretation of Moitie in Sullivan and Salveson ); Etheridge v. Harbor House Restaurant, 861 F.2d 1389, 1403 (9th Cir.1988) ("we concluded in Sullivan that a plaintiff's state law complaint is 'artfully pleaded' when it is drafted to avoid stating allegations or claims already resolved against the plaintiff by a prior federal judgment").
 
 
 16
 Our holding in Sullivan controls the result here. As in that case the plaintiff's claims here were framed under state law, are not barred by res judicata nor preempted by federal law, and would only have been in the district court's jurisdiction if they had been joined with federal claims. 813 F.2d at 1376.[2]
 
 COMMERCE CLAUSE CONSIDERATIONS
 
 17
 In denying Redwood's motion to remand, the district court relied upon, and appellees urge this court to follow, its prior decision in TOC, Inc. v. United Artists Theatre Circuit, 631 F.Supp. 832 (N.D.Cal.1986). The facts in that case were substantially the same as those presented here: the plaintiff independent theatre owners brought suit under the Cartwright Act, claiming that the defendants' methods of distributing and exhibiting motion pictures amounted to an unreasonable restraint of trade, and the defendants removed the case to federal court. The district court denied TOC's motion to remand, concluding that the defendants were "unquestionably involved in interstate commerce," and that subjecting them to the possibility of non-uniform state antitrust regulations would be inconsistent with its constitutional duty to strike down impermissible burdens on interstate commerce. 631 F.Supp. at 834.
 
 
 18
 The decision in TOC was never appealed and appears never to have been cited in a subsequent, published case. In fact, it appears that it was the dearth of approving authority that prompted the district court's decision to permit Redwood's interlocutory appeal to this court.
 
 
 19
 The outcome we reach today requires us to disapprove the holding in TOC. The Supreme Court has made clear that, even without implementing legislation, the Commerce Clause operates as a limitation upon the power of the states. Edgar v. Mite Corp., 457 U.S. 624, 640, 102 S.Ct. 2629, 2639, 73 L.Ed.2d 269 (1982); Great Atl. & Pac. Tea Co. v. Cottrell, 424 U.S. 366, 370-71, 96 S.Ct. 923, 927-28, 47 L.Ed.2d 55 (1976). But "[n]ot every exercise of state power with some impact on interstate commerce is invalid." Edgar, 457 U.S. at 640, 102 S.Ct. at 2629. "A state statute must be upheld if it 'regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental ... unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.' " Id., quoting Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).
 
 
 20
 The Cartwright Act "forbids combinations in restraint of trade and grants a cause of action to any person injured by such a combination." Speegle v. Board of Fire Underwriters, 29 Cal.2d 34, 42, 172 P.2d 867, 872 (1946). Thus, as the court in TOC recognized, " '[t]he federal and California antitrust laws ... [have] identical objectives [and] are harmonious with each other.' " 631 F.Supp. at 834 (quoting Partee v. San Diego Chargers Football Co., 34 Cal.3d 378, 382, 668 P.2d 674, 194 Cal.Rptr. 367 (1983)). Appellees contend that allowing Redwood to proceed in state court raises the spectre of their being subject to differing state regulation of their licensing and exhibition practices and hurt financially by the predicted inconsistencies. We are not persuaded.
 
 
 21
 In the first place we note that Paramount's fears are belied by the decision in Redwood I: although the outcome was adverse to Paramount's interests, the California Court of Appeal relied primarily upon principles enunciated in federal antitrust cases to reverse the lower court's grant of summary judgment.[3]
 
 
 22
 Secondly, we are aware that at least one other circuit has upheld against a commerce-clause challenge state regulation of motion-picture licensing practices far more intrusive and idiosyncratic than the possible outcome of a California court's interpretation of the Cartwright Act, informed by federal precedents, presents here. In Allied Artists Pictures Corp. v. Rhodes, 496 F.Supp. 408 (S.D.Ohio 1980), the district court rejected the plaintiff movie producers' and distributors' challenge to the constitutionality of an Ohio statute regulating the procedures by which motion pictures were to be licensed to theatre owners within the state. As is the situation here, the producers and distributors in Allied Artists contended that "since the motion picture industry is national in scope, its business and product are of such a nature that their regulation, if any, must be prescribed by a single [federal] authority." 496 F.Supp. at 436. Observing that after Exxon Corp. v. Governor of Md.[4] , "it is not open to plaintiffs to argue that simply because the economic market for motion pictures is nationwide, no state has the power to regulate that market," the district court concluded that "[a]bsent evidence that [the challenged regulations] ... impede the flow of interstate commerce, this Court cannot find that [they] impermissibly encroach[ ] on the Commerce Clause." 496 F.Supp. at 437.
 
 
 23
 The Sixth Circuit upheld the district court's finding of "no federal constitutional or statutory infirmity in [the Ohio] guidelines." 679 F.2d 656, 663 (6th Cir.1982). In a passage applicable to the facts of this case, it concluded that:
 
 
 24
 [i]f the distributor chooses to use [the method of competitive bidding], the process should be fair, and that is what the guidelines are designed to insure. The ... provisions are not burdensome and are designed to counteract deception and unfair manipulation of the bidding process.
 
 
 25
 Id. Beyond a contention of the kind disapproved by the Supreme Court in Exxon, appellees have failed to explain how California's application of the Cartwright Act provisions proscribing unreasonable restraints of trade threatens to impose an impermissible burden on interstate commerce, especially when such conduct is also illegal under federal law.
 
 
 26
 Finally, appellees' argument neglects the point that California courts are perfectly capable of handling commerce-clause challenges to state antitrust laws. In fact, in one case cited approvingly in appellees' brief, the California Supreme Court reversed a treble damages award under the Cartwright Act assessed against an NFL team in a suit by one of its players, holding that the application of state antitrust law to the interstate activities of professional football would impermissibly burden interstate commerce. Partee, 34 Cal.3d at 384, 668 P.2d 674, 194 Cal.Rptr. 367;[5] see also United Jersey Banks, 783 F.2d at 369 (in response to contention that New Jersey Antitrust Act did not extend to claim made in plaintiffs' complaint and that therefore remand after removal was improper, court concluded that "[i]n such a case, it should be for the New Jersey courts, in the first instance, to determine whether the count alleging violation of state antitrust law is without any facial validity.")
 
 
 27
 Given the absence of a prior federal judgment and the strong bias against permitting removal where a plaintiff has chosen to proceed solely on state-law grounds, we find that the district court erred in denying Redwood's motion to remand.[6] As Justice Brennan observed in Moitie, "[the well-pleaded complaint rule] is well grounded in principles of federalism ... It would do violence to state autonomy were defendants able to remove state claims to federal court merely because the plaintiff could have asserted a federal claim based on the same set of facts underlying his state claim." 452 U.S. at 407, 101 S.Ct. at 2432 (Brennan, J., dissenting) (emphasis in original).
 
 
 28
 REVERSED.
 
 
 
 [1]
 The complaint involved in this appeal alleges Cartwright Act violations with regard to films licensed by appellees from 1985-88. Gulf Western was not a named party in Redwood I
 
 
 [2]
 See also Price v. PSA, Inc., 829 F.2d 871, 876 n. 4 (9th Cir.1987) (describing Sullivan as limiting the artful pleading doctrine to cases "where a plaintiff is seeking to circumvent the res judicata impact of a federal judgment"), cert. denied, 486 U.S. 1006, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988). As this court's opinion in Ultramar points out, "[i]n Price no prior federal judgment even existed, and the court only described Sullivan to stress that this fact rendered application of the artful pleading doctrine inappropriate." 900 F.2d at 1416 n. 7; accord, United Jersey Banks, 783 F.2d at 368 (case in which five state banks sought under New Jersey statutes to block merger of two nationally chartered banks. Defendants removed the case to federal court, claiming that the complaint raised questions of federal law, and the district court denied the plaintiffs' motion to remand. The Third Circuit reversed, finding that "this is not a case ... in which the plaintiff first filed a lawsuit containing federal claims and then, after dismissal, sought to recast those claims under state law[;] [h]ere, plaintiff has consistently sought to litigate state claims in state court ") (emphasis added)
 
 
 [3]
 See 200 Cal.App.3d at 694, 248 Cal.Rptr. 189, where the court observed that:
 '[a] long line of California cases has concluded that the Cartwright Act is patterned after the Sherman Act and both statutes have their roots in the common law. Consequently, federal cases interpreting the Sherman Act are applicable to problems arising under the Cartwright Act.'
 Id., quoting Marin County Bd. of Realtors v. Palsson, 16 Cal.3d 920, 925, 130 Cal.Rptr. 1, 549 P.2d 833 (1976). Accordingly, the court stated that "[s]ince the relevant case law under the Cartwright Act is comparatively sparse, we will also rely chiefly on federal decisions" to evaluate Redwood's antitrust claims. Id.
 
 
 [4]
 In Exxon, the Supreme Court rejected the appellant oil companies' "novel suggestion that because the economic market for petroleum products is nationwide, no State has the power to regulate the retail marketing of gas," and upheld the state regulation at issue. 437 U.S. 117, 128, 98 S.Ct. 2207, 2215, 57 L.Ed.2d 91 (1978)
 
 
 [5]
 The result in Partee does not undermine the substantive analysis of appellees' commerce-clause claim, supra: the Supreme Court based its decision on the fact that the Cartwright Act previously had been held inapplicable to professional baseball and basketball and that "[n]o case has been found applying state antitrust laws to the interstate activities of professional sports." 34 Cal.3d at 384, 668 P.2d 674, 194 Cal.Rptr. 367
 
 
 [6]
 In the alternative appellees urge us to find that Redwood has acceded to federal jurisdiction. They offer no compelling reasons, however, for us to disregard "the traditional rule that the parties cannot by consent, waiver or estoppel obtain federal subject matter jurisdiction," and we therefore reject their suggestion. Sullivan, 813 F.2d at 1374